**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| **DENVER FOOTE,**<br><br>        **Plaintiff,**<br><br>**vs.**<br><br>**JOHN DOE 1; CLARK ALLEN; ERNESTO ESCOBAR HERNANDEZ; JEFFREY GEORGE; BRANDON HOLTAN; ADAM HERMAN; DANA WINGERT; CITY OF DES MOINES, IOWA,**<br><br>        **Defendants.** | **Case No. 4:21-cv-00043-SBJ**<br><br><br><br>**AMENDED PETITION AT LAW and JURY DEMAND** |

**COME NOWS** the Plaintiff, Denver Foote, by and through the undersigned counsel, and for her causes of action, respectfully states the following:

**PARTIES**

1.      Plaintiff Denver Foote was a resident of Polk County, Iowa at all times relevant to the events complained of herein.

2.      Defendant John Doe 1 is believed to be a citizen and resident of Iowa and is believed to have been employed as a law enforcement officer with the Des Moines, Iowa Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant John Doe 1 were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. John Doe 1 is sued in his/her official and individual capacities.

3.      Defendant Clark Allen is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department. At all times material hereto, the actions and omissions of Defendant Allen

1

were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

4.      Defendant Ernesto Escobar Hernandez is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department. At all times material hereto, the actions and omissions of Defendant Escobar Hernandez were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

5.      Defendant Jeffrey George is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department. At all times material hereto, the actions and omissions of Defendant George were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

6.      Defendant Kirk Bagby is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department at all times relevant to the events complained of herein. At all times material hereto, the actions and omissions of Defendant Kirk Bagby were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

7.      Defendant Brandon Holtan is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department. At all times material hereto, the actions and omissions of Defendant Holtan

were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

8.      Defendant Adam Herman is believed to be a citizen and resident of Iowa and was employed as a law enforcement officer with the City of Des Moines Police Department. At all times material hereto, the actions and omissions of Defendant Herman were made under the color of authority and law as a law enforcement officer for the Des Moines, Iowa Police Department. He is sued in his official and individual capacities.

9.      Defendant Dana Wingert is believed to be a citizen and resident of Iowa and was employed as the Chief of Police of the City of Des Moines Police Department. At all times material hereto, Defendant Wingert's actions and/or omissions were made under the color of authority as the Chief of Police. He is sued in his official and individual capacities.

10.     Defendant City of Des Moines, Iowa is a municipal corporation organized and authorized to operate under the laws of Iowa and is located at 400 East First Street, Des Moines, Polk County, Iowa. Defendant City is responsible for maintaining and operating the Des Moines Police Department.

## JURISDICTION AND VENUE

11.     Venue is proper in the District Court for Polk County pursuant to Iowa Code §669.4(1) as the district in which Plaintiff resides and/or in which the acts and omissions complained of occurred.

12.     Subject matter jurisdiction of the District Court for Polk County is proper pursuant to Iowa Code § 602.6101.

13.     The amount in controversy exceeds the jurisdictional amount.

## GENERAL FACTUAL ALLEGATIONS

14.     The disproportionate and excessive use of force against Black individuals by police officers in the United States is a well-documented, systemic problem. There is a more general, but equally troubling, problem with disproportionate law enforcement against Black individuals.

15.     Iowa—and Des Moines specifically—are not immune to these problems.[1]

16.     On Monday, May 25, 2020, a Minneapolis police officer brutally murdered George Floyd, an unarmed and non-resisting Black man, by kneeling on his neck for at least eight minutes and forty-six seconds, while other police officers stood by and allowed it to happen.

---

[1]     *See*     https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/racial-profiling-iowa/31829419/;
https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/racial-profiling-iowa-police-policies/31795745/;
https://www.desmoinesregister.com/story/news/2018/10/17/black-lives-matter-des-moines-police-paul-parizek-plymouth-church-ako-abdul-samad-racism-inclusivity/1669216002/;     https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/black-iowa-racial-profiling-studies/31787611/;
https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/black-iowa-racial-profiling-police/31787599/;
https://www.desmoinesregister.com/story/news/crime-and-courts/2015/08/16/racial-profiling-iowa/31795075/;
https://www.desmoinesregister.com/story/news/local/2015/07/10/black-iowa-conversations-videos/29966531/;
https://www.desmoinesregister.com/story/news/2014/11/19/blacks-arrest-rates-iowa-disparity/19250981/;     https://www.desmoinesregister.com/story/news/crime-and-courts/2020/05/18/des-moines-approved-75-000-settlement-family-claiming-excessive-force/5213435002/;     https://who13.com/news/mother-has-unfinished-business-despite-sons-racial-profiling-settlement-with-des-moines/amp/;     https://www.aclu.org/press-releases/iowa-ranks-worst-nation-racial-disparities-marijuana-arrests;.

17.     In the aftermath of Mr. Floyd's murder, hundreds of thousands of people assembled together throughout the United States to protest police brutality and systemic racism.

18.     Ms. Foote participated in one such protest the evening of May 30, 2020.

19.     Ms. Foote marched with local citizens to the State Capitol in Des Moines, Iowa.

20.     As the protesters walked down East Locust Street towards the Capitol, Ms. Foote observed a police vehicle drive through the crowd, coming close to hitting several people.

21.     When the protesters arrived at the Capitol, they were met by police in riot gear.

22.     Though the group of the protesters at the Capitol was peacefully protesting and not engaged in any illegal activity, police deployed multiple canisters of tear gas into the crowd.

23.     Though Ms. Foote was standing a significant distance behind the front line of the protesters, she was impacted by the tear gas.

24.     The tear gas burned Ms. Foote's eyes and she needed assistance rinsing them out.

25.     Ms. Foote left the Capitol area and walked towards Court Avenue.

26.     Ms. Foote observed police pepper-spraying individuals who were violating no laws, were not being violent or threatening, and who were not assembled with others who were breaking the law.

27.     Ms. Foote left the Court Avenue area sometime around midnight.

28.     Sometime after 2:00 a.m. on May 31, 2020, Ms. Foote returned to the Court Avenue bar area to pick up a friend.

29.     At approximately 2:37 a.m., dozens of police arrived on Court Avenue, near Hy-Vee, in response to individuals who were breaking into Hy-Vee.

30.     At no point on May 31, 2020 was Ms. Foote assembled with any person who was acting in a violent manner. Ms. Foote was not near the Hy-Vee when other individuals were vandalizing it.

31.     When police arrived, the individuals who were breaking into Hy-Vee immediately dispersed.

32.     Around 2:45 a.m., Ms. Foote was on 3rd Street walking back to her car to leave.

33.     By this time, there were no individuals unlawfully assembled near the Court Avenue bar area.

34.     As Ms. Foote attempted to leave, approximately twenty police officers came down the sidewalk towards her.

35.     Upon information and belief, none of those approximately twenty officers had their body camera activated, in violation of Des Moines Police Department policy.

36.     Those officers did not order Ms. Foote to disperse.

37.     Ms. Foote stopped walking and waited for the officers to pass.

38.     Ms. Foote was violating no laws.

39.     Ms. Foote was not being violent or threatening.

40.     Ms. Foote was not assembled with any persons who were acting in a violent manner.

6

41.    Ms. Foote was not in the immediate vicinity of a riot or an unlawful assembly.

42.    There was no probable cause to arrest Ms. Foote for any crime.

43.    With no warning, John Doe 1 walked by Ms. Foote and sprayed her in the face with pepper spray.

44.    Ms. Foote is four foot, eleven inches tall and weighs 100 lbs.

45.    Defendant Holtan then approached Ms. Foote and sprayed her again in the face with pepper spray.

46.    Defendant Holtan pushed Ms. Foote back into a wall with his riot shield.

47.    Defendant Herman also pushed Ms. Foote back into the wall with his shield.

48.    Defendant Herman then struck Ms. Foote multiple times with his baton.

49.    Defendants Herman and Holtan beat Ms. Foote to the ground with their shields and baton.

50.    Ms. Foote was not resisting and she repeatedly stated, "I am not resisting" as she was hit by Defendants Holtan and Herman.

51.    Either Defendant Holtan or Defendant Herman smashed his knee into Ms. Foote's back as she laid on the ground.

52.    Defendants Holtan and Herman zip-tied Ms. Foote's wrists together.

53.    Either Defendant Holtan or Defendant Herman stomped on Ms. Foote's eyeglasses and shattered them.

54.    Upon information and belief, John Doe 1, Defendant Holtan, and Defendant Herman assaulted and arrested Ms. Foote in retaliation for her association with the protests.

55.   The force used by John Doe 1, Defendant Holtan, and Defendant Herman was excessive and in violation of Des Moines Police Department policy and Iowa Law.

56.   Upon information and belief, John Doe 1 did not complete an Arrest Incident Report detailing their use of force against Ms. Foote, which is a violation of Des Moines Police Department policy.

57.   Upon information and belief, John Doe 1 did not complete any report documenting their arrest of Ms. Foote.

58.   Ten days after assaulting and falsely arresting Ms. Foote, on June 10, 2020, Defendants Herman and Holtan completed written reports documenting that they pepper-sprayed, struck, and arrested Ms. Foote.

59.   The report written by Defendant Herman falsely states that Ms. Foote tried to escape from Defendant Holtan.

60.   The report written by Defendant Herman falsely states that Ms. Foote refused to stop resisting and get down on the ground.

61.   The report written by Defendant Herman falsely states that Ms. Foote tried to push past Defendant Herman and Defendant Holtan's shields.

62.   The report written by Defendant Herman falsely states that Ms. Foote should have been charged with interference with official acts causing injury.

63.   Defendant Herman did not have his body camera activated at the time of his encounter with Ms. Foote.

64.   The report written by Defendant Holtan falsely states that Ms. Foote did not comply with verbal commands to get down on the ground.

8

65.     The report written by Defendant Holtan falsely states that Ms. Foote deflected his shield and ran past him.

66.     Defendant Holtan did not have his body camera activated at the time of his encounter with Ms. Foote. He did not attempt to retrieve the footage of his encounter with Ms. Foote until it was too late to recover the footage because it had been automatically deleted.

67.     By using completely unnecessary and violent force, John Doe 1, Defendant Holtan, and Defendant Herman committed the crime of assault against Ms. Foote.

68.     Upon information and belief, John Doe 1, Defendant Holtan, and Defendant Herman have not been criminally charged for their assault of Ms. Foote.

69.     Upon information and belief, several other police witnessed John Doe 1 Defendant Holtan, and Defendant Herman's's excessive use of force against Ms. Foote.

70.     Upon information and belief, none of the police who witnessed the assault of Ms. Foote reported John Doe 1, Defendant Holtan, or Defendant Herman to the Des Moines Police Department Office of Professional Standards for discipline.

71.     Ms. Foote's face and hair were soaked with pepper spray.

72.     Ms. Foote's eyes burned severely from the repeated pepper-spraying.

73.     Ms. Foote cried and begged to have her eyes rinsed out.

74.     John Doe 1, Defendant Holtan, and Defendant Herman did not rinse her eyes out.

75.     Ms. Foote suffered severe pain, bruising, and burning as a result of being pepper-sprayed, slammed to the ground, beat, and zip-tied by Defendants.



76.     Defendants Allen and Escobar Hernandez were assigned to processing Ms. Foote and transporting her to the jail in a paddy wagon.

77.     Defendants Allen and Escobar Hernandez were instructed to charge all of the arrestees in their paddy wagon with the two charges associated with case number 14451.

78.     Defendants Allen and Escobar Hernandez pulled up that case number and realized that the two charges they had been instructed to apply to everyone were Criminal Mischief 2nd degree, a Class D felony, and Rioting, an aggravated misdemeanor.

79.     Defendants Allen and Escobar Hernandez recognized that there was no basis to charge the arrestees in their paddy wagon with these charges. Defendant Allen stated, "We're putting them all under criminal mischiefs? That doesn't make any sense. There's no possible way."

80.     Defendant Allen therefore went to his supervisor, Defendant Bagby, to see if there had been a mistake. Defendant Bagby confirmed that everyone was to be charged with Rioting and Criminal Mischief.

81.     Defendant Escobar Hernandez acknowledged that there was no way those charges would hold up, but the charges would serve to "keep them inside." Defendant Allen agreed the charges were "an absolute crap shot."

82.     Defendants Allen and Escobar Hernandez subsequently transported Ms. Foote to jail.

83.     Defendants Allen and Escobar Hernandez booked Ms. Foote into the Polk County Jail on charges of Criminal Mischief in the 2nd Degree, a Class D felony, and Rioting, an aggravated misdemeanor.

84.     Later on May 31, 2020, Defendant George filed three criminal complaints against Ms. Foote charging her with Participation in a Riot, in violation of Iowa Code § 723.1; Unlawful Assembly, in violation of Iowa Code § 723.2; and Failure to Disperse, in violation of Iowa Code § 723.3.

85.     There was no probable cause to charge Ms. Foote with Criminal Mischief in the 2nd Degree, Rioting, Participation in a Riot, Unlawful Assembly, or Failure to Disperse.

86.     Upon information and belief, Defendants George, Allen, and Escobar Hernandez knew that there was not probable cause for the charges against Ms. Foote, but went forward with the charges anyway because directed to do so by their supervisors.

87.     Ms. Foote was not released from custody until June 1, 2020 at 12:12 p.m.

88.     Ms. Foote was released from custody on pretrial supervision, with an 8:00 p.m. curfew and a requirement to contact a pretrial supervision officer for an in-person visit once a month.

89.     On July 7, 2020, the State moved to dismiss the Participation in a Riot charge, stating police "have been unable to sufficiently document this defendant's actions for charges to go forward at this time."

90.     The Polk County District Court dismissed the charge the same day.

91.     On December 2, 2020, the State moved to dismiss the charges of Unlawful Assembly and Failure to Disperse stating, "There is insufficient evidence to proceed to a trial."

92.     The Polk County District Court dismissed the charges the same day.

93.     Upon information and belief, the prosecutor was unable to identify any of the officers who assaulted and arrested Ms. Foote.

94.     Because of Defendants' actions, Ms. Foote was afraid to attend protests. Ms. Foote was also unable to attend events that occurred after 8:00 p.m. because of her curfew.

95.     Des Moines Police officers have a pattern of using excessive force against individuals they believe are affiliated with protests and charging those individuals without probable cause.

96.     Specifically, Des Moines Police officers pepper-sprayed, assaulted, and criminally charged many other people the evening of May 30, 2020 and in the early morning hours of May 31, 2020 who were not violating any laws or acting in a violent or threatening manner.

97.     Des Moines Police officers pepper-sprayed a young woman, Essence Welch, the evening of May 30, 2020. Ms. Welch was not violating any laws or acting in a violent or threatening manner. Ms. Welch was recording law enforcement's activities at a protest.

98.     Des Moines Police officers pepper-sprayed and tackled a young man, Trent Schwab, in the early morning hours of May 31, 2020. Mr. Schwab likewise was not violating any laws or acting in a violent or threatening manner. Des Moines Police officers charged Mr. Schwab with several crimes for which there was no probable cause.

99.     Several of the people who were pepper-sprayed by Des Moines Police officers in the early morning hours of May 31, 2020 were cowering from law enforcement at the time they were assaulted. The officers who sprayed those individuals did not attempt to arrest them.

100.    A Des Moines Police officer kicked a man who was not violating any laws or acting in a violent or threatening manner. The man was cowering on the ground at the time the officer kicked him. A second Defendant Police officer struck that same man with a baton. The officers were not using force for any legitimate purpose; they did not even attempt to arrest the man.

101.    A Des Moines Police officer pepper-sprayed a man who was not violating any laws or acting in a violent or threatening manner, causing the man to fall face-down into the street in pain. The officer was not using force for any legitimate purpose; he did not even attempt to arrest the man.  At least eleven other officers observed the officer unnecessarily pepper-spray the man and did nothing to help the man as he laid in the street.

102.    Des Moines Police illegally arrested over forty other individuals in the early morning hours of May 31, 2020 and falsely charged them with protest-related crimes.

103.    Des Moines Police Officers forced members of the media to leave the downtown area so they could not observe and report the misdeeds of law enforcement.

104.    Des Moines Police Officers have a pattern of using excessive force against individuals they believe are affiliated with protests and charging those individuals without probable cause. This pattern continued beyond the early hours of May 31, 2020.

105.    Des Moines Police officers pepper-sprayed, tackled, and falsely charged a photographer on June 2, 2020, Mark Nieters, who clearly identified himself as media and was not violating any laws or acting in a violent or threatening manner.

106.    Defendant Police have intentionally and indiscriminately attacked neutral members of the press and legal observers on several occasions. This conduct has intimidated journalists and neutrals and reduced the number of media and observers willing to attend protests and to stay to document and observe the protests.

107.    Des Moines Police officers pepper-sprayed and arrested a Des Moines Register reporter, Andrea Sahouri, who was covering the protests near Merle Hay Mall on May 31, 2020. Ms. Sahouri advised the officers that she was working as a reporter. The officers arrested her, regardless.

108.    Approximately twelve Des Moines Police officers arrested three individuals at gunpoint outside the Blazing Saddle on June 2, 2020 who were not violating any laws or acting in a violent or threatening manner. Those officers then proceeded to raid the Blazing Saddle.

109.   Des Moines Police officers pepper-sprayed a Des Moines Register reporter, Katie Akin, who was complying with commands to disperse on June 1, 2020. Ms. Akin was not in the group with the protesters but was observing the protests from yards away. Ms. Akin was holding up her press badge and shouting that she was with the press at the time she was pepper-sprayed.

110.   It is clearly established that it is unconstitutional for law enforcement to use chemical spray when an individual has broken no law and is not threatening anyone. *See Davis v. City of Albia*, 434 F. Supp. 2d 692, 707 (S.D. Iowa 2006).

111.   It is clearly established that it is unconstitutional for law enforcement to tackle or beat an individual who is not fleeing or resisting arrest. *See Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013).

112.   It is clearly established that it is unconstitutional to arrest and charge an individual without probable cause. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010).

113.   It is clearly established that it is unconstitutional for law enforcement to retaliate against a citizen for that citizen's exercise of her First Amendment rights. *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007)

114.   It is clearly established that an officer is not excused for violating someone's constitutional rights simply because the officer is following orders.  *J.H.H. v. O'Hara*, 878 F.2d 240, 245 n.4 (8th Cir. 1989).

**CAUSES OF ACTION**

**COUNT 1**
**ILLEGAL SEIZURE**
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983**
**VIOLATION OF 4th AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually)**

115.   Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

116.   Defendants violated Plaintiff's clearly established federal constitutional rights by seizing Plaintiff without reasonable suspicion or probable cause to do so and by charging Plaintiff with crimes without probable cause.

117.   Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiff's civil and constitutional rights.

118.   Defendants' actions were willful, wanton, unlawful, and in gross disregard of Ms. Foote's civil rights, justifying an award of punitive damages.

119.   As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 2**
**ILLEGAL SEIZURE**
**CIVIL RIGHTS VIOLATION OF ARTICLE I, § 8 OF THE IOWA CONSTITUTION**
**(Against John Doe 1 , Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually)**

120.   Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

121.   Defendants violated Plaintiff's clearly established constitutional rights by seizing Plaintiff without reasonable suspicion or probable cause to do so and by charging Plaintiff with crimes without probable cause.

122.    Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiff's civil and constitutional rights.

123.    Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiff's civil rights, justifying an award of punitive damages.

124.    Plaintiff hereby requests reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of her constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

125.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 3**
**EXCESSIVE FORCE**
**CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983**
**VIOLATION OF 4th AMENDMENT TO THE UNITED STATES CONSTITUTION**
**(Against John Doe 1, Holtan, and Herman, Individually)**

126.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

127.    The force used by Defendants was excessive and applied maliciously and sadistically for the purpose of causing harm and not in a good faith effort to achieve a legitimate purpose.

128.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

129.    Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiff's civil and constitutional rights.

130.    Defendants' actions were willful, wanton, unlawful, and in gross disregard of Ms. Foote's civil rights, justifying an award of punitive damages.

131.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

## COUNT 4
## EXCESSIVE FORCE
## CIVIL RIGHTS VIOLATION OF ARTICLE I, § 8 OF THE IOWA CONSTITUTION
### (Against John Doe 1, Holtan, and Herman, Individually)

132.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

133.    The force used by Defendants was excessive and applied maliciously and sadistically for the purpose of causing harm and not in a good faith effort to achieve a legitimate purpose.

134.    Defendants demonstrated a deliberate indifference to and reckless disregard of Plaintiff's civil and constitutional rights.

135.    Defendants' actions were willful, wanton, unlawful, and in gross disregard of Plaintiff's civil rights, justifying an award of punitive damages.

136.    Plaintiff hereby requests reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of her constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

137.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

## COUNT 5
## RETALIATION
## CIVIL RIGHTS VIOLATION UNDER 42 U.S.C § 1983
## VIOLATION OF 1st AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually)

138.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

139.    Ms. Foote was exercising her First Amendment rights.

140.    Defendants violated Ms. Foote's clearly established federal constitutional rights by pepper-spraying her, slamming her to the ground, beating her, arresting her, and charging her with crimes in retaliation for her exercise of her First Amendment rights.

141.    Retaliation was a substantial or motivating factor for Defendants' decision to pepper-spray, assault, arrest, and criminally charge Ms. Foote.

142.    Defendants would not have pepper-sprayed, assaulted, arrested, and criminally charged Ms. Foote but for their retaliatory motive.

143.    Similarly situated individuals who were not engaged in the same sort of protected activity as Ms. Foote were not pepper-sprayed, assaulted, arrested, and criminally charged.

144.    Defendants demonstrated a deliberate indifference to and reckless disregard of Ms. Foote's civil and constitutional rights.

145.    Defendants' actions were willful, wanton, unlawful, and in gross disregard of Ms. Foote's civil rights, justifying an award of punitive damages.

146.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 6**
**RETALIATION**
**CIVIL RIGHTS VIOLATION OF ARTICLE I, § 7 OF THE IOWA CONSTITUTION**
**(Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually)**

147.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

148.    Ms. Foote was exercising her article I, § 7 rights by assembling with her fellow citizens and engaging in political speech.

19

149.    Defendants violated Ms. Foote's clearly established state constitutional rights by pepper-spraying her, slamming her to the ground, beating her, arresting her, and charging her with crimes in retaliation for her exercise of her article I, § 7 rights.

150.    Retaliation was a substantial or motivating factor for Defendants' decision to pepper-spray, assault, arrest, and criminally charge Ms. Foote.

151.    Defendants would not have pepper-sprayed, assaulted, arrested, and criminally charged Ms. Foote with pepper spray but for their retaliatory motive.

152.    Similarly situated individuals who were not engaged in the same sort of protected activity as Ms. Foote were not pepper-sprayed, assaulted, arrested, and criminally charged.

153.    Defendants demonstrated a deliberate indifference to and reckless disregard of Ms. Foote's civil and constitutional rights.

154.    Defendants' actions were willful, wanton, unlawful, and in gross disregard of Ms. Foote's civil rights, justifying an award of punitive damages.

155.    Ms. Foote hereby requests reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of her constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

156.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 7**
**CONSPIRACY**
**CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C §§ 1983 and 1985**
**VIOLATION OF 4th, 5th & 14th AMENDMENTS TO**
**THE UNITED STATES CONSTITUTION**
**(Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and**
**George, Individually)**

157.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

158.    Defendants reached an agreement among themselves to deprive Plaintiff of her constitutional rights.

159.    In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

160.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

161.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 8**
**CONSPIRACY**
**CIVIL RIGHTS VIOLATION OF ARTICLE I, §§ 6 & 8 OF THE IOWA CONSTITUTION**
**(Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and**
**George, Individually)**

162.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

163.    Defendants reached an agreement among themselves to deprive Plaintiffs of their constitutional rights.

164.    In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

165.   The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

166.   Plaintiff hereby requests reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of her constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

167.   As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 9**
**DELIBERATELY INDIFFERENT POLICIES, PRACTICES,**
**CUSTOMS, TRAINING AND SUPERVISION**
**CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983**
**VIOLATION OF 1st, 4th, 5th & 14th AMENDMENTS TO**
**THE UNITED STATES CONSTITUTION**
**(Against Wingert, Individually, and City of Des Moines, Iowa)**

168.   Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

169.   Defendants Wingert and City of Des Moines, Iowa are persons for the purposes of a Section 1983 action for damages.

170.   Defendants Wingert and City of Des Moines, Iowa are responsible for establishing, maintaining, and enforcing the official policies, procedures, patterns, practices, and/or customs of the Des Moines Police Department for use of pepper spray and use of force, generally.

171.   Defendant City of Des Moines, Iowa is charged with the duty to ensure that its law enforcement officers are properly trained and supervised.

172.   As Chief of Police, Defendant Wingert is ultimately responsible for the training and supervision of his officers.

173.   Defendants violated Plaintiff's federal constitutional rights by:

22

    a.  permitting City of Des Moines police officers to violate the constitutional rights of citizens;

    b.  ratifying and approving the unlawful use of force against citizens;

    c.  failing to enforce and implement policies preventing the unlawful use of force against citizens;

    d.  tolerating, encouraging, and permitting collusive statements by involved officers in such situations;

    e.  failing to adopt and enforce policies to document citizen interactions that do not result in arrest or citation;

    f.  failing to adopt a system to identify, track, and monitor problematic police behavior and patterns of unconstitutional conduct;

    g.  failing to take adequate disciplinary measures against City of Des Moines police officers who violate the civil rights of citizens;

    h.  failing to train and/or supervise properly officers in the constitutional requirements for use of force and the necessity of probable cause for arrest;

    i.  failing to implement adequate maintenance training and properly focused maintenance training.

174.   Defendants' policies, procedures, customs, and/or practices caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

175.   The need for the aforementioned training and supervision was obvious and it was foreseeable that the inadequacy of Defendants' training and supervision was likely to result in the violation of constitutional rights.

176.   Defendants demonstrated a deliberate indifference to and/or reckless disregard of Plaintiff's constitutional rights and those similarly situated to them.

177.   Defendants' failure to train and supervise Defendants caused the violations of Plaintiffs' constitutional and federal rights as set forth herein and in the other claims

and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives

178.   As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 10**
**DELIBERATELY INDIFFERENT POLICIES, PRACTICES,**
**CUSTOMS, TRAINING AND SUPERVISION**
**CIVIL RIGHTS VIOLATION PURSUANT TO**
**ARTICLE I, §§ 6, 7 & 8 OF THE IOWA CONSTITUTION**
**(Against Wingert, Individually, and City of Des Moines, Iowa)**

179.   Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

180.   Defendants Wingert and City of Des Moines, Iowa are responsible for establishing, maintaining, and enforcing the official policies, procedures, patterns, practices, and/or customs of the Des Moines Police Department for use of pepper spray and use of force, generally.

181.   Defendant City of Des Moines, Iowa is charged with the duty to ensure that its law enforcement officers are properly trained and supervised.

182.   As Chief of Police, Defendant Wingert is ultimately responsible for the training and supervision of his officers.

183.   Defendants violated Plaintiff's state constitutional rights by:

   a. permitting City of Des Moines police officers to violate the constitutional rights of citizens;

   b. ratifying and approving the unlawful use of force against citizens;

   c. failing to enforce and implement policies preventing the unlawful use of force against citizens;

   d. tolerating, encouraging, and permitting collusive statements by involved officers in such situations;

e. failing to adopt and enforce policies to document citizen interactions that do not result in arrest or citation;

f. failing to adopt a system to identify, track, and monitor problematic police behavior and patterns of unconstitutional conduct;

g. failing to take adequate disciplinary measures against City of Des Moines police officers who violate the civil rights of citizens;

h. failing to train and/or supervise properly officers in the constitutional requirements for use of force and the necessity of probable cause for arrest;

i. failing to implement adequate maintenance training and properly focused maintenance training.

184. Defendants' policies, procedures, customs, and/or practices caused the violations of Plaintiff's constitutional rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

185. The need for the aforementioned training and supervision was obvious and it was foreseeable that the inadequacy of Defendants' training and supervision was likely to result in the violation of constitutional rights.

186. Defendants demonstrated a deliberate indifference to and/or reckless disregard of Plaintiff's constitutional rights and those similarly situated to them.

187. Defendants' failure to train and supervise Defendantscaused the violations of Plaintiff's constitutional rights as set forth herein and in the other claims and resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

188. Plaintiff hereby requests reasonable attorney fees and costs associated with prosecuting this action as Defendants' violation of their constitutional rights was oppressive, conniving, harsh, cruel, and/or tyrannical.

189.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

### COUNT 11
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against John Doe 1, Holtan, Herman, Individually)

190.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

191.    John Doe 1, Defendant Holtan, and Defendant Herman repeatedly pepper-sprayed Plaintiff, struck her with batons, slammed her to the ground, and smashed her eyeglasses.

192.    There was no legitimate justification for John Doe 1, Defendant Holtan, or Defendant Herman's use of force against Plaintiff.

193.    The conduct of John Doe 1, Defendant Holtan, and Defendant Herman was outrageous.

194.    John Doe 1, Defendant Holtan, and Defendant Herman intentionally caused or recklessly disregarded the probability of causing emotional distress to Ms. Foote.

195.    Ms. Foote suffered severe or extreme emotional distress as a result of Defendants' actions.

196.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

### COUNT 12
### MALICIOUS PROSECUTION
### (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually)

197.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

198.   Defendants instigated a criminal prosecution against Plaintiff.

199.   The criminal prosecution against Plaintiff was dismissed.

200.   There was no probable cause for the charge against Plaintiff.

201.   Defendants acted with malice in initiating the prosecution against Plaintiff.

202.   As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

## COUNT 13
### FALSE ARREST / IMPRISONMENT
### (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually)

203.   Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

204.   Defendants detained Plaintiff against her will.

205.   The detention of Plaintiff was unlawful.

206.   As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

## COUNT 14
### LIBEL
### (Against Holtan, Herman, Allen, Escobar Hernandez, and George)

207.   Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

208.   Defendants Allen, Escobar Hernandez, and George published a statement falsely stating that Ms. Foote committed crimes.

209.   Defendants Herman and Holtan wrote police reports falsely stating that Ms. Foote had committed crimes.

210.    Ms. Foote committed no crime and there was no probable cause for the charges against Ms. Foote.

211.    Defendants' statements were libelous per se.

212.    Defendants' false statements injured Ms. Foote.

213.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**COUNT 15**
**ASSAULT AND BATTERY**
**(Against John Doe 1, Holtan, Herman)**

214.    Plaintiff incorporates the preceding paragraphs by reference as if each paragraph was set forth here.

215.    Defendants subjected Ms. Foote to contact of an insulting and provoking nature.

216.    The actions of Defendants were undertaken without the consent of Ms. Foote.

217.    The actions of Defendants were not justified by self-defense.

218.    The intentional acts of Defendants resulted in bodily contact with Ms. Foote that a reasonable person would deem insulting or offensive.

219.    As a result of Defendants' acts and omissions, Ms. Foote has in the past and will in the future suffer injuries and damages.

**PRAYER FOR RELIEF**

Plaintiff prays for Judgment against the aforementioned Defendants as follows:

a. Actual, Compensatory, Consequential, and all other allowable damages against Defendant in an amount yet to be determined;

b. Compensation for violation of her constitutional rights, mental anguish, and humiliation;

28

c.  Plaintiff's cost in this action, including reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

d.  Declaratory relief;

e.  Injunctive relief;

f.  An award of pre-judgment interest;

g.  Punitive damages; and

h.  Any other relief the Court deems just and equitable.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury in this matter on all counts to which Plaintiff is entitled to a jury.

**PARRISH KRUIDENIER DUNN GENTRY
BROWN BERGMANN & MESSAMER, L.L.P.**

By: _/s/ Gina Messamer_

Gina Messamer                    AT0011823
2910 Grand Avenue
Des Moines, Iowa 50312
Telephone: (515) 284-5737
Facsimile: (515) 284-1704
Email: gmessamer@parrishlaw.com
**ATTORNEY FOR PLAINTIFF**

**Original Filed.**