IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DENVER FOOTE,<br><br>　　Plaintiff,<br><br>vs.<br><br>JOHN DOE 1; CLARK ALLEN; ERNESTO ESCOBAR HERNANDEZ; JEFFREY GEORGE; BRANDON HOLTAN; ADAM HERMAN; KIRK BAGBY; DANA WINGERT; CITY OF DES MOINES, IOWA,<br><br>　　Defendants. | Case No. 4:21-cv-00043-SBJ<br><br><br>BRIEF IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' EXPERTS |

**COME NOWS** the Plaintiff, Denver Foote, and for her Brief in Support of Motion to Strike Defendants' Experts, respectfully states the following:

## INTRODUCTION

Foote commenced this case by filing a petition at law in the Iowa District Court in and For Polk County on December 23, 2020, against various City of Des Moines Police Officers, Chief of Police Dana Wingert, and the City of Des Moines. (DCD 1-1). The petition was removed to federal court on February 9, 2021. (DCD 1). The complaint was subsequently amended. The operative complaint (DCD 14-1) states the following claims:

　　Count 1: Illegal seizure, civil rights violation under 42 U.S.C. § 1983, violation of 4th Amendment to the United States Constitution (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually).

　　Count 2: Illegal seizure, civil rights violation of Article I, § 8 of the Iowa Constitution (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, Individually).

　　Count 3: Excessive force, civil rights violation under 42 U.S.C. § 1983, violation of 4th Amendment to the United States Constitution (Against John Doe 1, Holtan, and Herman, individually).

1

Count 4: Excessive force, civil rights violation of Article I, I, § 8 of the Iowa Constitution (Against John Doe 1, Holtan, and Herman, individually).

Count 5: Retaliation, civil rights violation under 42 U.S.C. § 1983, violation of 1st Amendment to the United States Constitution (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, individually).

Count 6: Retaliation, civil rights violation of Article I, § 7 of the Iowa Constitution (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, individually).

Count 7: Conspiracy, civil rights violation pursuant to 42 U.S.C. §§ 1983 and 1985, violation of 4th, 5th, and 14th Amendments to the United States Constitution (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, individually).

Count 8: Conspiracy, civil rights violation of Article I, §§ 6 & 8 of the Iowa Constitution (Against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, individually).

Count 9: Deliberately indifferent policies, practices, customs, training and supervision, civil rights violation pursuant to 42 U.S.C. § 1983, violation of 1st, 4th, 5th & 14th Amendments to the United States Constitution (against Wingert, Individually, and City of Des Moines, Iowa)

Count 10: Deliberately indifferent policies, practices, customs, training and supervision, civil rights violation pursuant to Article I, §§ 6, 7 & 8 of the Iowa Constitution (against Wingert, Individually, and City of Des Moines, Iowa).

Count 11: Intentional Infliction of Emotional Distress (against John Doe 1, Holtan & Herman, individually).

Count 12: Malicious prosecution (against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez, and George, individually).

Count 13: False imprisonment (against John Doe 1, Holtan, Herman, Bagby, Allen, Escobar Hernandez and George, Individually).

Count 14: Libel (against Holtan, Herman, Allen, Escobar Hernandez, and George).

Count 15: Assault and battery (against John Doe 1, Holtan and Herman).

(DCD 14-1).

These claims arise from the wrongful and violent arrest of Foote, followed by wrongful criminal charges, in the wake of protests against police brutality and systemic racism in honor of George Floyd. (*Id.*). It will be important for the jury to consider what the arresting and charging officers knew before they acted against Foote, and when they knew it. *See, e.g. Gerling v. City of Hermann, Mo.*, 2 F.4th 737, 743 (8th Cir. 2021) (defendant is "entitled to qualified immunity if a reasonable officer *in his position* could have believed that [plaintiff] had committed or was committing a crime."), *id.* ("In conducting arrests, officers may use only force that is objectively reasonable in light of the facts and circumstances *confronting them*.").

The purported expert reports produced by the defendants from Daniel Billington and Anthony DiCara do not serve that purpose. They are excludable under Federal Rules of Evidence 702 and 703, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) in that they (a) do not contain "expert" testimony, (b) invade the province of the jury to decide the facts, and (c) invade the province of the judge to instruct the jury as to the law. These reports should be struck: they should not be considered in deciding any pretrial motions, including a motions for summary judgment, and they should be excluded from any trial in this matter.

**ARGUMENT**

**I.     Daniel Billington's report must be struck.**

Daniel Billington's CV describes him as "an expert in the filed of collision reconstruction, human factors, visibility, and lighting." (Mot. to Strike Ex. A at 1). The majority of his expertise appears to be related to reconstructing personal injury-type events such as vehicle collisions, which includes "video enhancement and analysis." (*Id.*). His report essentially summarizes what he alleges are Foote's movements throughout

3

the night of May 30, 2020, based on his review of security and police footage that has been produced in discovery. (Mot. to Strike Ex. B at 1 ("[Y]our office retained my company to assist in processing, reviewing, and analyzing a voluminous body of video and photographic evidence . . . and to provide an objective analysis of the actions I observed.")). This "analysis" was completed using a description of Foote's outfit from the night. (*Id.* ("[M]y team spent many hours combing through the footage to identify persons of interest to this investigation . . . Ms. Foote was identified by her unique clothing combination and arrest photograph.")).

The report is largely based on descriptive statements of what Billington alleges can be seen in the video, such as:

- "Denver Foote was observed walking through the crowd with the same sign."
- "Denver Foote arrived at intersection of 2nd Avenue at Court Street."
- "Here, garbage cans were thrown into the street, a violent assault occurred, and people were throwing objects at vehicles."

(*Id.* at 2-4). Other parts of the report attribute motive to Foote's and others' actions on the scene, such as:

- "Denver Foote came to the protests equipped [with] materials expressing her clear intent to provoke protesters into violence."
- "[T]he crowd moved to engage law enforcement at 6th Avenue and Cherry Street."
- "Denver Foote positioned herself on the front line of confrontation with a sign containing a slogan that was clearly meant to provoke violence."

(*Id.*). The report concludes with some legal determinations, including that the protest on May 20, 2020 was a "riot," and that Foote failed to disperse despite an order to do so. (*Id.* at 2).

    A.    **Most of Billington's proposed testimony is not expert testimony.**

4

"Expert" testimony is testimony in the form of an opinion from a witness who is qualified by "knowledge, skill, experience, training, or education" to make such an opinion. Fed. R. Evid. 702. Generally, lay witness cannot testify to their opinions, and are limited to testifying to their personal observations. Fed. R. Evid. 602. The vast majority of Billington's proposed testimony is not opinion testimony, but rather descriptive statements based on what he observed while watching video footage. There is no indication that he applied any particular "knowledge, skill, experience, training, or education" in watching the video footage and describing it. While Billington has expertise in "video enhancement," such expertise is not necessary to identify an individual wearing an outfit on a video, and follow that individual's movements throughout the video. Billington did not enhance the videos at issue in this case. He and his team merely watched and summarized them. (Mot. to Strike Ex. B at 1).

As a general rule, experts are not permitted to be fact witnesses. *See, e.g. Wescott v. Crinklaw*, 68 F.3d 1073, 1076 (8th Cir. 1995) ("[A]n expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility. Nor may an expert pass judgment on a witness' truthfulness in the guise of a professional opinion."); *Clay v. Woodbury Cnty.*, 982 F. Supp. 2d 904, 917 (N.D. Iowa 2013) (expert witness "*would not* be allowed to opine on a factual matter on which the jurors are entirely capable of making a determination – such as what force was used by the officers, *nor would he be allowed to base his opinion to what he believes the correct version of the facts to be.*" (cleaned up, second emphasis added)).

In deciding whether to admit expert testimony, the courts "should also be mindful of other applicable rules" of evidence. *Daubert*, 509 U.S. at 595. "Expert evidence can be

both powerful and quite misleading because of the difficulty in evaluating it." *Id.* (cleaned up). Because Billington was not present in downtown Des Moines on May 30, 2020, and is not a fact witness in the case, he should not be permitted to testify to events that he did not personally observe. Nor should he be permitted to opine as to what the correct version of the events is, because that is a function of the jury. Simply put, the jury can watch the videos for themselves and draw their own conclusions. To allow otherwise would violate Federal Rule of Evidence 403 by confusing the issues and misleading the jury.

### B. Billington's lay testimony is excludable under Rule 401 and 402.

In addition to not being expert testimony, Billington's recitation of events that he observed over video footage are irrelevant to the facts at issue in this case. Foote's complaint is based on an arrest without probable cause, which was affected with unreasonable force. Resolving these factual determinations will require the court and/or jury to consider whether "a reasonable officer in [the defendants'] position could have believed that [Foote] had committed or was committing a crime." *Gerling*, 2 F.4th at 742-43.

Billington is not in the same position as the law enforcement officer defendants. During deposition, these defendants each testified that they had no idea whether Foote was at the protests before they arrived. They had no idea whether she was vandalizing property. They had no idea whether she was present when an order to disperse was given, and then violated the law by failing to disperse. Their testimony was that they assumed everyone that was downtown in that area was participating in the protest, and so they began making arrests and charging everyone with the same blanket charges of criminal mischief and participating in a riot. (*See* Def MSJ Appx 540–48, 554 (Herman), 623–626 (Holtan), 698 (George), 761–63 (Allen)). What Billington was able to observe,

with his birds-eye view of the crime scene, has no bearing on whether or not the defendants had arguable probable cause to arrest Foote. By his own admission, Billington did not review footage of Foote's arrest, or what she was doing immediately before the arrest, because there is no such footage. Billington should not be permitted to confuse the issues by testifying to irrelevant matters.

### C. Billington is not qualified to testify as to Foote's or the crowd's motives.

Federal courts apply the test from *Daubert*, 509 U.S. at 592-93, to determine whether expert testimony is admissible. Under *Daubert*, the court conducts a "preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and . . . properly can be applied to the facts in issue." *Id.* While expert testimony is to be liberally admitted, its exclusion is proper "if it is so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997).

Billington's C.V. does not establish that he is "qualified to assist the finder of fact" in interpreting Foote's or the crowd's motives in protesting on May 30, 2020. *Lauzon v. Senco Prods.*, 270 F.3d 681, 686 (8th Cir. 2001). His expertise is "in the field of collision reconstruction, human factors,[1] visibility, and lighting." (Ex. A at 1). Obviously, his expertise does not cover mind reading. He is not an expert in protests, crowd dynamics, or riots. (*Id.*). Billington did not interview Foote and, to the best of counsel's knowledge, did not interview members of the crowd. (*See* Ex. B). Any testimony as to what Foote or

---

[1] "Human factors" typically refers to the physiological changes that law enforcement officers experience in high-stress, use-of-force type situations. *See, e.g.* Darrell L. Ross, *Assessing Lethal Force Liability Decisions and Human Factors Research* 2013, available at https://www.aele.org/Ross_Forum_2013-2.pdf.

the crowd intended with their protests is simply not based on Billington's expertise in accident reconstruction, human factors, visibility, or lighting. His speculation as to what Foote or the crowd intended, based on video footage that the jury can view and interpret for themselves, "can offer no assistance to the jury" in resolving the issue of whether there was probable cause to arrest Foote. This speculation should be struck.

### D. The remainder of Billington's opinions are excludable because they invade the province of the judge and jury.

While an expert may offer opinions that embrace the ultimate issue in the case, Rule 704(a), "an expert cannot testify as to matters of law, and legal conclusions are not a proper subject of expert testimony." *Frye v. Hamilton Cnty. Hosp.*, 2019 WL 2404330 (N.D. Iowa Jun. 7, 2019) (citing *Lombardo v. St. Louis*, 2019 WL 414773, at *8 (E.D. MO. Feb. 1, 2019); *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995)). Further, "[o]pinions that 'merely tell the jury what result to reach' are not admissible." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010).

Billington's proposed testimony includes his opinion that the protest was a riot, Foote was a rioter, and that Foote failed to disperse. These are "matters of law" and "legal conclusions" which are not the proper subject of expert testimony. Whether or not the protest was a riot is an issue for the jury to decide (as is the question of whether Foote was participating in the riot). The court, and not Billington, will be responsible for explaining the difference between a riot and a protest to the jury. And the jury will ultimately decide whether or not the there was probable cause to arrest Foote for failure to disperse. These portions of Billington's proposed testimony invade the province of the jury and the court, and should be struck.

## II. Anthony DiCara's report must be struck.

DiCara is an expert in law enforcement and crowd control. (Ex. C). Unlike Billington, his expertise is directly related to the circumstances of this case. But, like Billington, his report is largely based on summarizing the "facts" of what happened on May 30, 2021, based on his review of video footage. His first conclusion is that Foote was a "violent opportunist" (VO), which he defines as an

> illicit actor who may or may not hold violent extremist ideological beliefs, but seeks to exploit opportunities in non-violent protests to engage in unlawful violence against federal, state, or local government, law enforcement personnel or facilities, as well as other critical infrastructure, that either poses a danger to human life, threat of potential destruction of critical infrastructure, or would be so disruptive as to endanger the minimal operations of state.

(Ex. D at 3). DiCara claims that Foote is a VO based on certain facts he observed in the video footage. (Ex. D). DiCara concludes that there was probable cause to arrest Foote and charge her under Iowa law, and that the use of force made to arrest her was ultimately reasonable. (*Id.* at 6-7).

### A. DiCara's proposed testimony invades the province of the judge to instruct the jury on the law, and the jury to decide the ultimate issue.

DiCara's report attempts to define legal standards and reach legal conclusions, rather than describe police training or his own professional experience. His two bottom-line conclusions—that there was probable cause to arrest Foote, and the use of force to arrest her was reasonable—cross the line described by Judges Bennett and Strand in *Clay v. Woodbury Cnty.*, 982 F. Supp. 2d 904, 917 (N.D. Iowa 2013) and *McElree v. City of Cedar Rapids*, 372 F. Supp. 3d 770, 786-88 (N.D. Iowa 2019). As both judges have explained, DiCara "can testify as to routine and acceptable police practices based on his training and expertise, he can respond to abstract or hypothetical questions by opining

9

that the police action described was or was not reasonable in the circumstances describe in such a question, and can opine as to whether he personally believed that the police action was reasonable, but he cannot opine as to whether police action met the legal standard for reasonableness." *McElree*, 372 F. Supp. 3d at 787 (quoting *Clay*).

The court, not DiCara, must instruct the jury on the standards for probable cause and reasonable use of force. The jury, not DiCara, must determine whether the facts available to the defendant officers at the time that they arrested Foote supported arguable probable cause, and whether the use of force was reasonable under the totality of the circumstances. DiCara can testify to his own training, how he trains others, and what he would have done in the circumstances. But he cannot simply tell the jury what result to reach.

### B. DiCara's report is irrelevant under Rule 401 and 402.

DiCara's recitation of events that he observed over video footage are also irrelevant to the facts at issue in this case. Foote's complaint is based on an arrest without probable cause, which was affected with unreasonable force. Resolving these factual determinations will require the court and/or jury to consider whether "a reasonable officer in [the defendants'] position could have believed that [Foote] had committed or was committing a crime." *Gerling*, 2 F.4th at 742-43.

Like Billington, DiCara is not in the same position as the law enforcement officer defendants. During depositions, these defendants each testified that they had no idea whether Foote was at the protests before they arrived. They had no idea whether she was vandalizing property. They had no idea whether she was present when an order to disperse was given, and then violated the law by failing to disperse. Their testimony was that they assumed everyone that was downtown in that area was participating in the

protest, and so they began making arrests. What DiCara was able to observe, with his birds-eye view of the crime scene, has no bearing on whether or not the defendants had arguable probable cause to arrest Foote. By his own admission, DiCara did not review footage of Foote's arrest, or what she was doing immediately before the arrest, because there is no such footage. DiCara should not be permitted to confuse the issues by testifying to irrelevant matters.

## CONCLUSION

Billington and DiCara's expert testimony are not admissible. For Billington, the testimony is not "expert" testimony at all. For both, the testimony invades the province of the Court and Jury, and goes beyond the bounds of permissible expert testimony. This testimony should not be considered in connection with Foote's case, and must be struck.

**WHEREFORE**, Plaintiff Denver Foote respectfully requests Court grant her motion to strike, and for any further relief deemed necessary and just.

> **PARRISH KRUIDENIER DUNN GENTRY BROWN BERGMANN & MESSAMER, L.L.P.**
>
> By: */s/ Gina Messamer*
> Gina Messamer           AT0011823
> 2910 Grand Avenue
> Des Moines, Iowa 50312
> Telephone: (515) 284-5737
> Facsimile: (515) 284-1704
> Email: gmessamer@parrishlaw.com
> **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 19, 2022, I electronically filed the foregoing with the Clerk of Court using the ECF system and a true copy of the foregoing was served electronically on the attorneys of record.

By: */s/ Gina Messamer*